Donnie R. Cox, SBN 137950
Law Office of Donnie R. Cox
402 North Nevada Street
Oceanside, CA 92054-2025
Telephone (760) 400-0263
Facsimile (760) 400-0269
drc@drcoxlaw.com

Paul W. Leehey, SBN 92009
Law Office of Paul W. Leehey
PO Box 305
Fallbrook, CA 92088
Telephone (760) 723-0711
Facsimile (760) 723-6533
law@leehey.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE COURTHOUSE

| | |
|---|---|
| PRECILA BARRERA; FABIAN BARRERA; RAQUEL BARRERA; R.B., a minor, M.B., a minor, K.B., a minor, Se.B., a minor, and So.B., a minor, by and through their Guardian ad Litem, Robert R. Powell, <br><br> Plaintiffs, <br> v. <br><br> COUNTY OF MONTEREY; LINDA CASTILLO, REBECCA BARRON, CAITLIN BURCHAM; and DOES 1-20, inclusive, <br> Defendants | ) **Case No.** <br>) <br>) **COMPLAINT FOR VIOLATION** <br>) **OF CIVIL RIGHTS AND** <br>) **MONELL RELATED CLAIMS** <br>) <br>) <br>) <u>DEMAND FOR JURY TRIAL</u> <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

1

Plaintiffs Precila Barrera, Fabian Barrera, and Raquel Barrera, and Minor Plaintiffs R.B., M.B., K.B., Se.B. and So.B., by and through their Guardian ad litem, Robert R. Powell, allege as follows:

1.     Plaintiffs assert that the statutory or other basis for the exercise of jurisdiction in this United States Federal District Court is based upon a federal question asserted under 42 U.S.C. §1983 as to violations of Plaintiffs' rights under the U. S. Constitution and laws, including those under the First, Fourth and Fourteenth Amendments.

2.     At all relevant times mentioned in this Complaint, Plaintiffs Precila Barrera and Fabian Barrera were a married couple and residents of Monterey County, California.

3.     At all relevant times mentioned in this Complaint, Plaintiff Raquel Barrera was the adopted daughter of Plaintiffs Precila and Fabian Barrera, and lived with her parents in Monterey County, California.

4.     At all relevant times mentioned in this Complaint, Minor Plaintiff R.B. (born 2003) was the adopted son of Plaintiffs Precila and Fabian Barrera, and lived with his parents in Monterey County, California. Application has been made to Robert R. Powell as the Guardian ad Litem for Minor Plaintiff R.B. in this action.

5.     At all relevant times mentioned in this Complaint, Minor Plaintiff M.B. (born 2004) was the adopted son of Plaintiffs Precila and Fabian Barrera, and lived with his parents in Monterey County, California. Application has been made to Robert R. Powell as the Guardian ad Litem for Minor Plaintiff M.B. in this action.

6.     At all relevant times mentioned in this Complaint, Minor Plaintiff K.B. (born 2007) was the adopted daughter of Plaintiffs Precila and Fabian Barrera, and lived with her parents in Monterey County, California. Application has been made to Robert R. Powell as the Guardian ad Litem for Minor Plaintiff K.B. in this action.

7.     At all relevant times mentioned in this Complaint, Minor Plaintiff Se.B. (born 2010) was the adopted son of Plaintiffs Precila and Fabian Barrera, and lived

with his parents in Monterey County, California. Application has been made to Robert R. Powell as the Guardian ad Litem for Minor Plaintiff Se.B. in this action.

8. At all relevant times mentioned in this Complaint, Minor Plaintiff So.B. (born 2012) was the adopted daughter of Plaintiffs Precila and Fabian Barrera, and lived with her parents in Monterey County, California. Application has been made to Robert R. Powell as the Guardian ad Litem for Minor Plaintiff So.B. in this action.

9. At all times mentioned herein, the COUNTY OF MONTEREY ("COUNTY") was and is a public entity organized and existing under the laws of the State of California. At all times relevant hereto, the COUNTY was working through its subdivisions, including its Family and Children's Services ("FCS") division.

10. At all times mentioned herein, Defendant LINDA CASTILLO ("CASTILLO") was an officer, agent, and employee of the COUNTY.

11. At all times mentioned herein, Defendant REBECCA BARRON ("BARRON") was an officer, agent, and employee of the COUNTY, and the supervisor of Defendant CASTILLO.

12. At all times mentioned herein, Defendant CAITLIN BURCHAM ("BURCHAM") was an officer, agent, and employee of the COUNTY.

13. Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as Does 1 through 20, Inclusive, and therefore sue them by such fictitious names. Plaintiffs will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained.

14. Plaintiffs are informed and believe, and based upon such information and belief allege, that each of the Defendants is responsible in some manner for the events and happenings referred to herein and was the legal cause of injury and damages to Plaintiffs as herein alleged.

15. Plaintiffs are informed and believe, and based upon such information and belief allege, that at all times herein mentioned each and every Defendant was the agent and/or employee of their co-Defendants, and each of them, acting at all relevant

times herein under color of the authority of a governmental entity under the statutes, ordinances, regulations, customs and usage of the State of California and/or the United States Constitution and related laws.

## COMMON ALLEGATIONS

16. This action arises from an investigation and proceedings of a juvenile dependency investigation pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code initiated or conducted by Defendants COUNTY, including through its FCS division, regarding Plaintiffs.

17. At all times relevant herein, the Defendant Social Services Supervisor (hereinafter "Supervisor") BARRON, and Does 1 to 20, was charged with the duty to supervise her subordinates and prevent them from engaging in improper or unlawful conduct such as alleged herein. Plaintiffs are further informed and believe and on such basis allege that said Supervisor, instead of properly supervising her social worker subordinates and preventing them from violating Plaintiffs' rights as further alleged herein, aided, assisted, and abetted each of the remaining social worker defendants in their efforts to violate Plaintiffs' rights.  On information and belief, Plaintiffs allege that said Supervisor knew, or in the exercise of reasonable diligence should have known, of the wrongful nature of her subordinates' conduct.  Plaintiffs further allege on information and belief that Defendant Supervisor knew or should have known that the wrongful conduct of her subordinates, mentioned herein, created a substantial risk of harm to Plaintiffs, but disregarded said risk by expressly approving, impliedly approving, or failing to take adequate action to prevent the wrongful conduct. Plaintiffs are informed and believe that the conduct of Defendant BARRON, and Does 1 to 20, was a substantial factor in causing Plaintiffs' harm.

18. Plaintiffs Fabian and Precila Barrera have been married since February 25, 1986, and have four biological children (all of whom are now adults). Plaintiffs Fabian and Precila love children, and in 2009, decided they would open their home and their hearts to children in need. In 2010, they received their first call to foster a

child. They opened their home to Minor Plaintiff Se.B. After six months of fostering Se.B., Fabian and Precila adopted him.

19. Between 2010 and March 2019, Plaintiffs Fabian and Precila Barrera were foster parents to 14 children. In June 2012, the County chose the Barreras to foster Minor Plaintiff So.B., who was removed from her mother's care immediately after her birth.

20. Fabian and Precila maintained a close relationship with So.B.'s birth mother. Between June 2012 and June 2014, Fabian and Precila met weekly with So.B.'s birth mother, who had four other children. Fabian and Precila came to care deeply for So.B.'s siblings, and informed the County that if it ever became necessary for them to be placed into foster care, they wished to be contacted first.

21. That call came in June 2014, when the County contacted the Barreras and asked them to foster Raquel Barrera and Minor Plaintiffs R.B., M.B. and K.B. Fabian and Precila welcomed the four children into their home. They ensured the children had all of their needs met, including securing therapy for the children. In 2016, Fabian and Precila adopted all five siblings. However, they continued to ensure the children had weekly visits with their birth mother.

22. Over the years, the COUNTY issued licenses to Fabian and Precila Barrera on multiple occasions to provide respite care for foster children and adopt those children, if circumstances so necessitated. Fabian and Precila Barrera were subjected to regular inspections and interviews by the COUNTY. During those occasions when Fabian and Precila had foster children in their care, they had social workers come to their home monthly to assess the care that was being provided to the children. The Barreras consistently received high praise for their care.

23. Fabian is a former law enforcement officer, and Precila has spent her adult life caring for children. They are both deeply religious. They raised their adult children in faith, and with love and appropriate discipline. All of their adult children are successful members of the community, and have remained very close to their

parents. In fact, one of their adult children continues to live at home, and another one of their adult children lives only two houses away from her parents.

24. Fabian and Precila determined to raise their adoptive children no differently than they had raised their biological children. They informed their adoptive children of the "house rules," and let them know that they expected the children to adhere to those rules or there would be consequences. The family ate dinner together nightly, at which they would discuss the children's day and how things were going. If the children were encountering any type of difficulty, the family would hold a more in-depth family meeting to discuss and resolve the issues. Fabian and Precila ensured their children were active in sports, the church, and that they excelled in their studies. Fabian and Precila also ensured that the children retained a connection with their biological parents, to the extent possible. The children were all happy, healthy, and prosperous in the Barreras' care.

25. Due to their wish for their children to focus on their studies, their faith, and other extra-curricular activities, the Barreras had strict rules for their teenage children. These rules included no dating until age 18, no make-up until age 16 (for the girls), and no cell phone until college. These were the same rules the Barreras had for their biological children, who excelled in school and life in part because of these rules.

26. In December 2018, Precila Barrera discovered that Minor Plaintiff R.B. had been dating. A family meeting was called to discuss the issue, and to set restrictions and expectations on how to move forward. As a result of this family meeting, it was determined that R.B. was given an earlier bedtime and was taken off the roster for his football team. During the family meeting, it was discussed that if R.B. continued to date the girl, his parents would consider other consequences, including disenrolling him from school and having him attend online courses. Although Fabian and Precila pulled R.B. out of school sports, he continued to work out and play basketball with his friends at the YMCA; and helped his father coach the

younger boys' baseball teams. He also remained active in his church's youth group.

27. During January and February 2019, Precila and Fabian continued to enforce the restrictions placed on R.B. R.B. was reminded on several occasions of the potential consequences if they learned he was continuing to violate the house rule regarding dating.

28. During this time period, Fabian and Precila took in another child, 3-year-old L, as a foster child. Fabian and Precila had provided respite care to L since she was only 3 months old and had informed the County that if it ever needed a new foster home or adoptive parents for L, they wished to be on the top of the list.

29. On or about March 19, 2019, Fabian and Precila's daughter Sabrina, who was a teacher at Soledad High School where R.B. attended school, observed R.B. holding hands and hugging a girl. Sabrina discussed her observation with R.B., and advised him to talk to his parents when he got home. Sabrina informed R.B. that if he did not discuss this with his parents, she would tell them about it.

30. When Sabrina arrived home that evening, it was clear to her that R.B. had not discussed the issue with their parents. Accordingly, she called a family meeting to discuss the situation. During the meeting, Fabian and Precila called R.B.'s biological mother to ensure she was informed of R.B.'s actions and the consequences they were discussing. R.B.'s mother advised R.B. to follow the house rules and take advantage of the opportunities he was receiving from his adoptive family. She informed the Barreras that R.B. could come spend the weekend with her so she could talk to him about his behavior.

31. R.B. was upset by the meeting and the restrictions that had been placed on him, including the statement that he needed to stop seeing the girl. When the meeting ended, R.B. said he "couldn't be there" and left the house. Fabian and Precila monitored R.B.'s activities via the surveillance cameras on their home, and confirmed that he was simply sitting in the front yard. After a while, R.B. went two doors down to the Barreras' daughter, Samantha's home. Samantha texted Fabian and Precila to

let them know that R.B. was with her and safe, and R.B. spent the night with Samantha.

32.     Over the next few days, Fabian and Precila continued to communicate with Samantha and R.B. R.B. was still upset about the consequences that had been imposed on him because of his violation of the house rules, and did not wish to come home. They agreed that R.B. would continue to stay with Samantha for the next few days. Fabian and Precila let R.B. know that they wanted him to return home, but that he needed to follow the house rules.

33.     On March 22, 2019, due to concerns that R.B's behavior was being negatively  influenced by  his friends at school, Fabian Barrera went to R.B.'s high school and disenrolled him from school. Fabian was told that R.B. had to be enrolled in another school within five days. R.B. and his father discussed what he wanted to do and R.B. said he wanted to stay with his birth mother for a few days. Fabian therefore drove R.B. to his birth mother's home. Because Fabian did not know how long R.B. would be staying, he informed R.B.'s birth mother that R.B. had to be enrolled in another high school within 5 days.

34.     On March 24, 2019, Fabian and Precila drove the other children to spend the day with R.B. and their birth mother. R.B. apologized to Fabian and Precila and said he wanted to come home.  On March 25, 2019, R.B.'s biological mother returned R.B. to the Barreras' home. Fabian enrolled R.B. in an independent study program to ensure that he continued with his studies.

35.     On March 26, 2019, R.B. had an appointment with his therapist. During the visit, he informed his therapist of the events of the preceding days.

36.     On or about March 27, 2019, based on what she had heard from R.B. and assumptions that she made, R.B.'s therapist called Precila to schedule a sit-down meeting with her. Due to Precila's busy schedule caring for the children, she and the therapist had difficulty finding a mutually acceptable date for the meeting. During the conversation, the therapist informed Precila that she intended to call the County to

report that Precila was emotionally abusing R.B. On that evening, the therapist called the hotline at the COUNTY's FCS to report that she was concerned about R.B. being disenrolled from school, being out of the home for several days, and spending the weekend with his birth mother. The referral was coded as a 10-day referral, but requested an expedited response if possible. Defendant CASTILLO was assigned to the referral.

37.     CASTILLO did nothing to investigate the March 27, 2019 referral until April 3, 2019, when she went to the family home. As nobody was home, CASTILLO left. CASTILLO did not contact the reporting party about the allegations.

38.     On or about April 9, 2019, after R.B.'s therapy session, Precila met with R.B.'s therapist. The therapist again told Precila that she was going to report her to Child Protective Services. Precila informed the therapist that she believed family therapy might alleviate her concerns, and that she would look into scheduling that. Plaintiffs are informed and believe, and based thereon allege, that R.B.'s therapist made another report to the County on April 9, 2019.

39.     On or about April 11, 2019 (15 days after she had been assigned the referral), Defendant CASTILLO arrived at the Barrera home to begin her investigation into R.P.'s therapist's allegations. At this visit, CASTILLO interviewed Fabian, Precila, RB., Raquel, K.B., Se.B. and So.B. (M.B. was not at home). All children were clean and dressed appropriately, had no signs or symptoms of abuse or neglect, and reported that they felt safe at home. CASTILLO interviewed R.B. for about 20 minutes. During this interview, she learned of the house rules, that R.B. had voluntarily left the home after the March 19 discussion and stayed with his sister for the next 4 days, that he had then stayed with his mom for a few days, and that since his return home, he was taking online classes. R.B. informed CASTILLO that he was OK, and was not having any thoughts of self-harm. CASTILLO concluded from this interview that R.B. was depressed and isolated, even though he had told her he was OK, and CASTILLO did not even ask him about his extra-curricular activities (such

as the YMCA, coaching youth baseball, and his church youth group).

40. On or about April 14, 2019, Defendant CASTILLO came to the Barrera home and interviewed M.B. He, also, was clean and dressed appropriately, had no signs or symptoms of abuse or neglect, and reported that he felt safe at home.

41. On or about April 22, 2019, Defendant CASTILLO interviewed an individual with R.B.'s school. This is the only collateral witness who CASTILLO interviewed during her investigation. The witness stated that he knew that R.B. had been disenrolled from school.

42. As a result of R.B.'s therapist's report to the COUNTY, another investigation was begun into Fabian and Precila's license to operate a foster home. Defendant CAITLIN BURCHAM was assigned to conduct this investigation. On or about April 22, 2019, Defendant BURCHAM arrived at the Barrera home to conduct an unannounced home visit. Defendant BURCHAM interviewed all members of the household. Following her visit, Defendant BURCHAM consulted with CASTILLO.

43. On or about April 26, 2019, Defendant BURCHAM attempted to speak with R.B.'s therapist, the reporting party, about her allegations, but did not have a signed release of information which would allow her to speak with the therapist. The therapist did inform Defendant BURCHAM that the Barreras had taken R.B. out of her care. However, BURCHAM had also learned from another collateral contact that Fabian was working on securing a new therapist for R.B., as well as family counseling.

44. On or about April 30, 2019, Defendant CASTILLO informed Precila that the County wished to have a CFT meeting with the family to discuss Defendant CASTILLO's concerns that the consequences the family imposed on R.B. for violating the house rules (i.e., disenrolling him from school and sports) constituted emotional abuse. At the time of this call, Precila was providing care for L, her own younger children, and her grandchildren, and could not leave the home to meet with CASTILLO. During this discussion, Precila informed Defendant CASTILLO that she

has a right to parent her children how she wishes so long as she is not abusing or neglecting them, and that she has the right to make the decision to disenroll her son from school and place him in independent studies if she chooses to do so. Precila reminded Defendant CASTILLO that her children were doing well in school and otherwise and were well-cared for. Precila advised Defendant CASTILLO that she did not believe Defendant CASTILLO had the ability to mandate the way Precila parented her children. At no time during this conversation did CASTILLO tell Precila that the COUNTY was considering removing R.B. or any of the other children from her care because of her actions.

45. Following this conversation, Defendant CASTILLO spoke with Defendants BARRON and BURCHAM. Although all of the children in the Barrera household were healthy, had no signs of abuse or neglect, were doing well in school, and had all told both Defendant CASTILLO and Defendant BURCHAM that they felt safe in the household, and there was no evidence whatsoever that any of the children were in imminent danger of serious bodily injury in the time it would take to obtain a warrant, Defendants CASTILLO, BARRON and BURCHAM made the decision to remove all children in the household from the care and custody of their parents. At no time did CASTILLO, BARRON and BURCHAM attempt to obtain a warrant or court order for the removal of the children.

46. On May 1, 2019, Defendant CASTILLO arrived at the Barrera household with three units of officers with the Soledad Police Department. CASTILLO informed Fabian and Precila that she was removing all children from the household, including Foster Child L. Although the children were crying and told CASTILLO repeatedly that they didn't want to leave their home, she had them transported to the Cherish Center.

47. On May 2, 2019, Fabian arrived at the offices of the COUNTY's Family and Children's Services as soon as they opened to demand that they return his children. After further consultation between Defendant CASTILLO and Defendant

11

BARRON, and due to the children's repeated requests to return home, the decision was made to return the children to their home. Defendant CASTILLO advised the Barreras that the children were being returned under the condition that the family participate in the COUNTY's Voluntary Family Maintenance program. Raquel Barrera, R.B., M.B., K.B., Se.B., and So.B. were brought back to their home. Under a Safety Plan provided by CASTILLO, R.B. was to stay with his sister, Samantha Barrera. Foster child L. was not returned to the home.

48. On May 3, 2019, Fabian and Precila Barrera spoke with the COUNTY's Program Manager concerning Foster Child L. They informed her that L. was like their child, and they did not understand why the COUNTY had not returned her to their care. The Barreras were told that "things would work out" and L. would be returned to their care. On May 22, 2019, Foster Child L. was returned to the Barreras' care.

49. On May 28, 2019, Defendant CASTILLO returned to the home to introduce the VFM social worker to the family. On that visit, Defendant CASTILLO informed Precila Barrera that she had substantiated the allegation of emotional abuse against Precila and had reported her to the State for inclusion on California's Child Abuse Central Index ("CACI"). Defendant CASTILLO informed Fabian Barrera that she had substantiated an allegation of neglect against him, but did not report him to the state.

50. On learning of the decision to place her name on the CACI index, Precila Barrera retained counsel to file a grievance against the County.

51. On July 31, 2019, Defendant BURCHAM, on behalf of the COUNTY, issued a Notice of Action seeking to rescind the Barreras' Resource Family approval. In the Notice of Action, BURCHAM reported that Precila and Fabian Barrera had emotionally abused an adopted child living in their home and that they refused to follow a safety/services agreement established to address the alleged abuse. Defendant BURCHAM did not serve the Notice until August 14, 2019. On that same date, a social worker arrived at the Barreras' home to remove Foster Child L. from

their care. He informed the Barreras' that he was ordered to remove the child, and that it was not his decision.

52. On October 16, 2019, a CACI Review Hearing was held in Monterey County concerning Precila Barrera's challenge of the decision to report her to the CACI. Defendants CASTILLO and BURCHAM both testified at the hearing. Both CASTILLO and BURCHAM provided demonstrably perjured testimony to support their decision to substantiate the finding of abuse against Precila Barrera and report her to the CACI.

53. On November 8, 2019, a Voluntary Family Maintenance Child and Family Team meeting was held concerning the family's progress with Voluntary Family Maintenance Services. On the date of the meeting, the Barrera family had been receiving VFM services for approximately 6 months. At the meeting, the COUNTY social worker, Maria Martinez, reported that she was always welcome in the home, that the family was receptive and open with her and always willing to work with her, that the family was compliant with the VFM case plan, and that they were very "transparent, honest and pleasant." She reported that the parents' number one priority was their family. The decision was made to close the VFM effective December.

54. Only five days later, on November 13, 2019, the COUNTY filed an Accusation with the Department of Social Services seeking to rescind Resource Family Approval for the Barreras.

55. On November 21, 2019, the Deputy Director for the COUNTY's FCS issued the final decision on Precila Barrera's Grievance, determining that the allegation made by the COUNTY should be changed to **unfounded.** The COUNTY notified the Department of Justice and requested that Precila's name be removed from the CACI. The Deputy Director found that Defendant CASTILLO's investigation was not complete, and that there was no evidence to support her findings.

56. The COUNTY, including its social workers CASTILLO, BURCHAM, BARRON and DOES 1 through 20, continue in their efforts to prevent the Barreras

13

from providing foster care to children, including Foster Child L. At an administrative hearing on July 13, 2020, CASTILLO again provided demonstrably false testimony in an effort to support the COUNTY's rescission of the Barreras' license. No decision has been made in the administrative hearing at the time of this filing.

57.     Defendants' actions have caused Plaintiffs to suffer from significant emotional and mental distress. Plaintiffs remain in significant fear that officials with the COUNTY will again invade their lives and their home and interfere with their substantive and procedural due process rights protected by the Fourteenth Amendment of the United States Constitution, including their liberty interest in the right of familial association, and their privacy rights under the California State Constitution, and First Amendment Right to be free from the unjustified interference with the parent-child relationship, and from retaliation for exercising those rights.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983, 1985

## (First and Fourth Amendment – By Raquel Barrera, R.B., M.B., K.B., Se.B. and So.B., Against CASTILLO, BARRON, BURCHAM and DOES 1-20)

58.     Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

59.     At all applicable times herein, Defendants CASTILLO, BARRON, BURCHAM and DOES 1-20, and each of them, were acting under color of state law.

60.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, knew and agreed, and thereby conspired, to unlawfully detain Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. from the care and custody of their parents, on and after May 1, 2019. Said Defendants' detention and continued detention of Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. was done without just cause or authority, without imminent threat of serious bodily injury, and without court order, and by use of coercion, duress, undue influence, and fraud, thereby unlawfully depriving Raquel Barrera and Minor

Plaintiffs R.B., M.B., K.B., Se.B., and So.B. of their liberty under the Fourth Amendment. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 further failed to implement and/or follow, or ignore, the procedural safeguards required by Federal and State law to satisfy due process and protect the Constitutional rights of Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 acted in retaliation to Plaintiff Precila Barrera's exercise of her right to object to, refuse, and complain about Defendant County's employees' conduct and threats, as protected by the First and Fourth Amendment to the United States Constitution and laws as articulated below.

61. Plaintiffs are informed and believe that Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, acted, knew and/or agreed, and/or thereby conspired together until May 2, 2019, to deprive and continue to deprive Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. of their constitutional rights without proper reason or authority, court order, probable cause, and with deliberate indifference to said Plaintiffs' rights and/or by failing to correct the wrongful conduct of other Defendants.

62. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 further conspired to interfere with and violate the Fourth Amendment rights of Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. by acting and conspiring, without just, reasonable or proper cause or warrant to detain and interfere with their custody from their parents; and using intimidation, coercion and duress in connection therewith.

63. As a direct result of the conduct by Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and in accordance with 42 U.S.C. §1983 and §1985, the civil rights of Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. have been violated in that they have suffered, and will continue to suffer, damages, including but not limited to, mental anxiety and anguish; as well as to incur

attorneys' fees, costs and expenses in this matter as authorized by 42 U.S.C. §1988, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

64.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20's wrongful and unlawful conduct as herein alleged was intentional, done with malice, and/or performed with conscious disregard for the rights of Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. As a result of their despicable conduct, said Plaintiffs are entitled to recover punitive damages from Defendants CASTILLO, BARRON, BURCHAM and DOES 1-20 for their wrongful acts in in an amount to be shown according to proof at trial.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983, 1985

### (First and Fourteenth Amendments – By All Plaintiffs Against Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20)

65.     Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

66.     At all applicable times herein, Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, were acting under color of state law.

67.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, knew and agreed, and thereby conspired, to interfere with and continue to interfere with, all Plaintiffs' familial association rights, including their liberty interest in the right of familial association, on and after May 1, 2019. Such rights are protected by the First Amendment of the United States Constitution, and by procedural and substantive due process guaranteed by the Fourteenth Amendment of the United States Constitution.

68.     Said Defendants' interference with Plaintiffs' familial association rights was done without just cause or authority, without imminent threat of serious bodily injury, without court order, and without parental consent; and by use of coercion,

16

duress, undue influence, and fraud. Said Defendants' interference deprived all Plaintiffs of their due process rights and right to familial association under the First and Fourteenth Amendments of the U.S. Constitution. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 further failed to implement and/or follow, or ignore, the procedural safeguards required by Federal and State law to satisfy due process and protect the rights of families. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 acted in retaliation to Plaintiff Precila Barrera's exercise of her right to object to, refuse, and complain about the COUNTY employees' conduct and threats, as protected by the First and Fourteenth Amendment to the United States Constitution and laws as articulated below.

69.    Plaintiffs are informed and believe that Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, acted, knew and/or agreed, and/or thereby conspired together until at least May 2, 2019, to continue to deprive Plaintiffs of their constitutional rights without proper reason or authority, court order, probable cause, and with deliberate indifference to Plaintiffs' rights and/or by failing to correct the wrongful conduct of other Defendants.

70.    Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 further conspired to interfere with and violate Plaintiffs' civil familial association and due process rights, as set forth in the First and Fourteenth Amendment of the United States Constitution, by acting and conspiring, without just, reasonable or proper cause or warrant to detain and interfere with the custody of Plaintiff Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B. and So.B. from their parents and using intimidation, coercion and duress in connection therewith.

71.    As a direct result of the conduct by Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and in accordance with 42 U.S.C. §1983 and §1985, Plaintiffs' civil rights have been violated in that they have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys' fees, costs and expenses in this matter as

17

authorized by 42 U.S.C. §1988, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

72.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20's wrongful and unlawful conduct as herein alleged was intentional, done with malice, and/or performed with conscious disregard for Plaintiffs' rights. As a result of their despicable conduct, Plaintiffs are entitled to recover punitive damages from Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 for their wrongful acts in in an amount to be shown according to proof at trial.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

**(First and Fourteenth Amendments – By Plaintiff Precila Barrera Against Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20)**

73.     Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

74.     At all applicable times herein, Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, were acting under color of state law.

75.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, knew and agreed, and thereby conspired, to interfere with and continue to interfere with, Plaintiff Precila Barrera's protected liberty interest to be free from stigma, on and after April 22, 2019, by agreeing and conspiring to place Plaintiff Precila Barrera's name on California's Child Abuse Central Index ("CACI"). Such rights are protected by procedural and substantive due process guaranteed by the Fourteenth Amendment of the United States Constitution.

76.     Said Defendants' interference with Plaintiff Precila Barrera's constitutional rights was done without just cause or authority; and by use of coercion, duress, undue influence, and fraud. Said Defendants' interference deprived Plaintiff Precila Barrera of her Fourteenth Amendment liberty interest to be free from reputational harm. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-

18

20 further failed to implement and/or follow, or ignore, the procedural safeguards required by Federal and State law to satisfy due process and protect Plaintiff Precila Barrera's rights. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 acted in retaliation to Plaintiff Precila Barrera's exercise of her right to object to, refuse, and complain about the COUNTY employees' conduct and threats, as protected by the First and Fourteenth Amendment to the United States Constitution and laws as articulated below.

77.     Plaintiffs are informed and believe that Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, acted, knew and/or agreed, and/or thereby conspired together until at least November 21, 2019, to continue to deprive Plaintiff Precila Barrera of her constitutional rights without proper reason or authority, court order, probable cause, and with deliberate indifference to Plaintiff Precila Barrera's rights and/or by failing to correct the wrongful conduct of other Defendants.

78.     As a direct result of the conduct by Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and in accordance with 42 U.S.C. §1983 and §1985, Plaintiff Precila Barrera's civil rights have been violated in that she has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys' fees, costs and expenses in this matter as authorized by 42 U.S.C. §1988, and in connection with her grievance against the COUNTY due to these Defendants' actions, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

79.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20's wrongful and unlawful conduct as herein alleged was intentional, done with malice, and/or performed with conscious disregard for Plaintiff Precila Barrera's rights. As a result of their despicable conduct, Plaintiff Precila Barrera is entitled to recover punitive damages from Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 for their wrongful acts in in an amount to be shown according to proof at trial.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

## (First and Fourteenth Amendments – By Plaintiffs Fabian and Precila Barrera Against Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20)

80.     Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

81.     At all applicable times herein, Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, were acting under color of state law.

82.     Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, knew and agreed, and thereby conspired, to interfere with and continue to interfere with, the constitutional rights of Plaintiffs Fabian and Precila Barrera to procedural due process, on and after April 22, 2019. Such rights are protected by the Fourteenth Amendment of the United States Constitution.

83.     Said Defendants' interference with the due process rights of Fabian and Precila Barrera was done without just cause or authority; by use of coercion, duress, undue influence, and fraud; and by the use of misrepresentations, falsehoods, and failures to provide exculpatory evidence. Said Defendants' interference deprived Plaintiffs Fabian and Precila Barrera of their right to procedural due process, and resulted in the loss of their license to foster children (a license they had held since 2009), the loss of their Foster Child L., who they had planned to adopt if reunification with her mother failed,[1] and the inclusion of "substantiated" allegations for abuse and neglect in the State's Child Welfare Services database when the allegation disposition should be "unfounded" (as to both Precila and Fabian).. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 further failed to implement and/or follow, or ignore, the procedural safeguards required by Federal and State law to satisfy due

---

[1] In fact, L's reunification with her mother failed and the County is attempting to terminate her parental rights.

process. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 acted in retaliation to Plaintiff Precila Barrera's exercise of her right to object to, refuse, and complain about the COUNTY employees' conduct and threats, as protected by the First and Fourteenth Amendment to the United States Constitution and laws as articulated below.

84.    Plaintiffs are informed and believe that Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and each of them, acted, knew and/or agreed, and/or thereby conspired together until the present, to continue to deprive Plaintiffs Fabian and Precila Barrera of their constitutional rights and their license to provide a home to foster children without proper reason or authority, court order, probable cause, and with deliberate indifference to said Plaintiffs' rights and/or by failing to correct the wrongful conduct of other Defendants.

85.    As a direct result of the conduct by Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, and in accordance with 42 U.S.C. §1983 and §1985, the civil rights of Plaintiffs Fabian and Precila Barrera have been violated in that they have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys' fees, costs and expenses in this matter as authorized by 42 U.S.C. §1988 and in connection with the administrative proceedings concerning the loss of their foster license, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

86.    Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20's wrongful and unlawful conduct as herein alleged was intentional, done with malice, and/or performed with conscious disregard for the rights of Plaintiffs Fabian and Precila Barrera. As a result of their despicable conduct, Plaintiffs Fabian and Precila Barrera are entitled to recover punitive damages from Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20 for their wrongful acts in in an amount to be shown according to proof at trial.

## FIFTH CLAIM FOR RELIEF

### *MONELL*-RELATED CLAIMS

### (By All Plaintiffs against the COUNTY)

87.    Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

88.    At all relevant times herein, Defendant COUNTY, including through its FCS, established, implemented, promulgated and/or followed written policies and procedures and/or longstanding and widespread customs and/or practices (hereinafter collectively referred to as "policy" or "policies") which policies were the cause of violation of Plaintiffs' constitutional rights granted to them pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York City Department of Social Services* (1978) 436 U.S. 658, including those under the First, Fourth and Fourteenth Amendments. These written policies and procedures, and longstanding and widespread customs and/or practices include, but are not limited to:

    a. The policy of using coercive, intimidating, abusive, demeaning, and improper conduct during the investigation of child dependency matters, including using the threat of removal of children when no basis for removal is present;

    b. The policy of detaining and removing children from their parents without exigent circumstances (imminent danger of serious bodily harm from that parent), court order, and/or consent of the parent or legal guardian, and without consideration of less restrictive methods; in violation of constitutional law as established in *Mabe v. County of San Bernardino*, 237 F.3d 1001 (9th Cir.2001), *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir.2000), *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir.2007), and other applicable case and statutory law.

c. The policy of detaining and removing children from their parents based solely on a belief that the children were in imminent danger of emotional harm, in violation of constitutional law as established in cases including *Mabe v. County of San Bernardino*, 237 F.3d 1001 (9th Cir.2001), *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir.2000), *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir.2007), and more particularly, in *Moodian v. County of Alameda*, 206 F.Supp.2d 1030 (N.D.Cal.2002).

d. The policy of reporting parents to the CACI when the only allegations are emotional abuse, and including substantiated abuse and neglect allegations in the State's CWS/CMS system when those allegations have been determined to be determined by the FCS agency.

e. The policy of using trickery, duress, fabrication and/or false testimony or evidence, and in failing to provide exculpatory evidence, in preparing and presenting reports and documents in administrative proceedings, causing an interference with due process and property rights.

f. The policy of retaliating against a parent who exercises her right to object to, refuse and/or complain about the conduct of employees of the County's FCS.

g. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train and supervise its officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments, and under California law, when performing actions related to the investigation of child abuse and neglect, including dependency type proceedings.

23

      h.   The policy of acting with deliberate indifference in failing to correct the wrongful conduct of other employees failing to providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments, when performing actions related to child abuse and neglect, and dependency-type proceedings.

(The list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile records, which are subject to access, use, and/or disclosure pursuant to California Welf. & Inst. Code §§ 827 and 828.)

89.   Defendant COUNTY, including its FCS, had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the First, Fourth and Fourteenth Amendments; to use reasonable care to select, supervise, train, control and review the activities of all agents, officers and employees in their employ and to counsel and discipline such employees; and further, to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiffs herein so as to not cause the injuries and damages alleged herein.

90.   Defendant COUNTY breached its duties and obligations to Plaintiffs, including but not limited to, failing to establish, implement and follow correct and proper Constitutional polices, procedures, customs and practices; by failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; by failing to counsel or discipline their agents and employees; and by permitting Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, Inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged.

91.   Plaintiffs are informed and believe, and based thereon allege, that

24

Defendant COUNTY has known for years that its policies, procedures, practices, and customs violate the civil rights of children and their families. Numerous civil rights actions have been brought against Defendant COUNTY regarding its unconstitutional policies, procedures, practices and customs, yet Defendant COUNTY has continued to follow the unconstitutional policies set forth above.

92.    Defendant COUNTY knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would, and did, cause Plaintiffs to be injured and damaged by its wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and as to its legal duties and obligations to Plaintiffs.

93.    These actions, or inactions, of Defendant COUNTY are the legal cause of injuries to Plaintiffs as alleged herein; and as a result thereof, Plaintiffs have sustained general and special damages, as well as incurring attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

94.    Based upon the foregoing, Plaintiffs request the Court to enjoin Defendant COUNTY from proceeding with its unconstitutional policies and to order it to conform to the mandates of the United States Constitution and laws.

**SIXTH CLAIM FOR RELIEF**

**FALSE IMPRISONMENT**

**(By Raquel Barrera, R.B., M.B., K.B., Se.B. and So.B. Against All Defendants)**

95.    Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

96.    Defendants COUNTY, CASTILLO, BARRON, BURCHAM and DOES 1-20, inclusive, unlawfully detained, and/or caused to be detained, Plaintiff Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. without evidence of any imminent danger of serious physical injury, without just or reasonable cause, without consent, and/or without probable cause; and therefore deprived them of their

25

personal civil liberties. The unlawful removal, and continued detention of said Plaintiffs commenced on May 1, 2019 and continued until May 2, 2019.

97. Defendant COUNTY is vicariously responsible for the conduct of Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, inclusive, under Government Code section 815.2.

98. As a legal result of Defendants' conduct, Plaintiff Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. suffered, and will continue to suffer, damages, including but not limited to, mental anxiety and anguish, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

99. Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20's wrongful and unlawful conduct as herein alleged was intentional, done with malice, and/or performed with conscious disregard for the rights of Raquel Barrera and Minor Plaintiffs R.B., M.B., K.B., Se.B., and So.B. As a result of their despicable conduct, said Plaintiffs are entitled to recover punitive damages from Defendants CASTILLO, BARRON, BURCHAM and DOES 1-20 for their wrongful acts in in an amount to be shown according to proof at trial.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF STATE CIVIL RIGHTS (Civil Code §52.1)**

**(By All Plaintiffs Against All Defendants)**

100. Plaintiffs adopt and incorporate as if set forth at length, and to the extent applicable, the paragraphs set forth hereinabove.

101. Defendants CASTILLO, BARRON, BURCHAM, and Does 1 through 20, Inclusive, are individuals who were acting under color of law in conducting an investigation pursuant to California law, including as to proceedings described in Government Code §820.21(a) and mandatory duties under Welfare and Institutions Code, including sections 306, 309, 311, 332, and 319.

102. Defendants CASTILLO, BARRON, BURCHAM, and Does 1 through 20, Inclusive, interfered with Plaintiffs' rights secured by the Constitution and/or laws

of the United States, and the rights secured by the Constitution and/or laws of the State of California, through threat, intimidation, and/or coercion. At the time of said Defendants' acts, they had the specific intent to deprive and interfere with Plaintiffs' enjoyment of the rights, interests, privileges and privacy rights afforded to them under the laws and constitutions of California and the United States of America.

103.   Defendants' conduct was a substantial factor in causing harm and injuries to Plaintiffs.

104.   Defendant COUNTY is vicariously responsible for the conduct of Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20, inclusive, under Government Code section 815.2.

105.   As a legal result of Defendants' conduct, Plaintiffs suffered, and will continue to suffer, damages, including but not limited to, mental anxiety and anguish, in an amount not yet ascertained, all of which shall be shown according to proof at trial. Plaintiffs Fabian and Precila Barrera have also suffered, and continue to suffer, legal fees, costs and expenses in connection with the administrative proceedings filed as a result of Defendants' conduct.

106.   Defendants CASTILLO, BARRON, BURCHAM, and DOES 1-20's wrongful and unlawful conduct as herein alleged was intentional, done with malice, and/or performed with conscious disregard for Plaintiffs' rights. As a result of their despicable conduct, Plaintiffs are entitled to recover punitive damages from Defendants CASTILLO, BARRON, BURCHAM and DOES 1-20 for their wrongful acts in in an amount to be shown according to proof at trial.

## **PRAYER**

WHEREFORE, Plaintiffs request trial by jury and pray judgment against the Defendants as follows:

1.   For special, general and compensatory damages in amounts to be proven at the time of trial.

27

2.    For punitive and exemplary damages in amounts to be proven at the time of trial against Defendants CASTILLO, BARRON, BURCHAM, and DOES 1 through 20;

3.    For statutory and civil penalties against Defendants CASTILLO, BARRON, BURCHAM, and DOES 1 through 20;

4.    For attorneys' fees.

5.    For pre-judgment interest at the prevailing statutory rates.

6.    For costs of suit.

7.    For injunctive relief; and

8.    For such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all causes of action set forth above.

Respectfully submitted,

DATED: July 29, 2020                LAW OFFICE OF DONNIE R. COX

By:   */s/ Donnie R. Cox*
Donnie R. Cox, Attorney for Plaintiffs